UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

CURLEY CULP, et al.,                    Civil No. 13-7815 (NLH/JS)

          Plaintiffs,

                                              OPINION

     v.


NFL PRODUCTIONS LLC, a/b/a
NFL FILMS, et al.,

          Defendants.

_____


**APPEARANCES:**

WILLIAM J. PINILIS
PINILIS HALPERN
160 MORRIS STREET
MORRISTOWN, NJ 07962
*Attorney for plaintiffs Curley Culp, John Riggins, Ron Yary,*
*Dave Casper, Thomas Mack, Phil Villapiano, Roman Gabriel, Jr.,*
*Willie Buchanon, Joe Kapp, and Mike Bass*

STEPHEN M. ORLOFSKY
JONATHAN M. KORN
BLANK, ROME, LLP
301 CARNEGIE CENTER
3RD FLOOR
PRINCETON, NJ 08540
*Attorneys for defendants NFL Productions LLC d/b/a NFL Films and*
*the National Football League*


**HILLMAN, District Judge**

     Plaintiffs are retired National Football League players who

filed a class action complaint in this Court alleging that they,

and others similarly situated, should be compensated each time
the defendants show their images in NFL films.  Defendants have
moved to have this case transferred to the United States
District Court for the District of Minnesota.  For the reasons
explained below, defendants' motion will be granted.

I.   **JURISDICTION** [1]

The Court exercises subject matter jurisdiction pursuant to
28 U.S.C. § 1331 (federal question), as plaintiffs have raised
claims pursuant to the federal Lanham Act, 15 U.S.C. § 1125.[2]

---

[1] Although the Court's subject matter jurisdiction is clear in
light of the federal claim, we note that the complaint fails to
properly plead diversity jurisdiction.  The complaint alleges
that "the plaintiffs and other putative class members are
citizens of states different than defendants." That is more than
the statute requires.  Under 28 U.S.C. § 1332(d), plaintiffs (in
addition to the $5,000,000 monetary threshold) must merely show
that "any member of a class of plaintiffs is a citizen of a
State different from any defendant." Id.  However, even under
this lower standard, the jurisdictional test is difficult to
apply here.  First, Plaintiff fails to allege the citizenship of
NFL Films.  According to the complaint, NFL Films is an LLC
whose sole member is a limited partnership.  No allegations are
made with regard to the citizenship of the members of the
limited partnership rendering impossible any reliance on that
entity to provide the diversity required by § 1332(d).  The
jurisdictional allegation regarding the NFL is also lacking.
Pursuant to 28 U.S.C. § 1332(d)(10), an unincorporated
association is a citizen of the state of its principal place of
business and the state under whose laws it is organized.  The
complaint makes no allegation regarding the latter and merely
cites the NFL's "headquarters." A "headquarters" may or may not
be an association's "principal place of business."  While it
would appear likely given the low standard, we lack the
requisite allegations to assume diversity jurisdiction here.

[2] Inaccurately cited in the Complaint as "15 U.S.C. § 1525."

## II.   __BACKGROUND__

According to the allegations in plaintiffs' complaint, plaintiffs are all former National Football League ("NFL") players.  Defendant NFL Productions LLC d/b/a NFL Films ("NFL Films") is a Delaware limited liability company with its principal place of business located in Mt. Laurel, New Jersey. Defendant NFL is a tax-exempt association under 26 U.S.C. § 501(c)(6)[3] with its headquarters located in New York, New York.

The plaintiffs in this case opted-out of a settlement reached in the class action case of Dryer v. Nat'l Football League, No. 09-cv-02182-PAM-AJB (D. Minn. filed Aug. 20, 2009). The Dryer case involved the same issue presented here: whether retired NFL players should be compensated each time the NFL uses or displays films that contain the plaintiffs' images. Plaintiffs in this matter filed a separate complaint asserting class action allegations and state that they are suing on behalf of two classes of persons, namely (1) the "declaratory and injunctive relief class" defined as all former NFL professional football players, or their heirs or assigns, that have opted-out of the class action settlement in Dryer; and (2) the "damages class" defined as all former NFL professional football players, or their heirs or assigns, that have opted-out of the class

---

[3] Inaccurately cited in the Complaint as "18 U.S.C. § 501(c)(6)."

action settlement in <u>Dryer</u>, and whose images or likenesses have been utilized, following the conclusion of their NFL careers, in any NFL Films footage displayed, sold, and/or licensed by Defendants or their affiliated entities from August 20, 2003 through the time of a final judgment in this litigation." Plaintiffs assert claims for false endorsement under the Lanham Act, for violation of rights of publicity under several state laws, and unjust enrichment.[4]

---

[4] Specifically, plaintiffs allege: Violation of New Jersey Common Law of Unfair Competition, Violation of New Jersey Common Law Regarding Rights of Publicity, False Endorsement, § 43(a) of the Lanham Act, 15 U.S.C. § 1125, Violation of Right of Publicity, California Civil Code § 3344, Violation of Right of Publicity, California Common Law, Violations of State Right of Publicity Statutory and Common Laws (i.e., Arizona common law protecting the right of publicity, Alabama common law protecting the right of publicity,  Connecticut common law protecting the right of publicity, Florida Stat. § 540.08, Florida common law protecting the right of publicity, Georgia common law protecting the right of publicity, Hawaii common law protecting the right of publicity, Illinois Rev. Stat. ch. 765 § 1075.1 et seq., Illinois common law protecting the right of publicity, Indiana Code § 32-26,  Kentucky Rev. Stat. §391.170, Kentucky common law protecting the right of publicity, Massachusetts Gen. Laws Ann. Ch. 214, § 3A,  Michigan common law protecting the right of publicity, Missouri common law protecting the right of publicity, Mississippi common law protecting the right of publicity, Nebraska Rev. Stat. § 20-202, New York Civil Rights Law § 51, North Carolina common law protecting the right of publicity, Ohio Rev. Code Ann. § 2741.01 et seq., Ohio common law protecting the right of publicity,  Oklahoma Stat. tit. 12, § 1448, 1449, Rhode Island Gen. Laws § 9-1-28, 9-1-28.1(a)(2), Tennessee Code Ann. § 47-25-1102 et seq., Texas Property Code § 26.011, Utah Code Ann. § 45-3-1 et seq., Utah common law protecting the right of publicity, Virginia Code § 8.01-40, Washington Rev. Code § 63.60.010 et seq., Wisconsin Stat. §995.50(2)(b), and Wisconsin common law protecting the right of publicity), and Unjust Enrichment.

In addition to this case, there are three other pending opt-out cases that raise similar claims.  One of those cases, the <u>Dryer</u> opt-out case, was filed in Minnesota and is pending before Judge Paul A. Magnuson of the United State District Court for the District of Minnesota who presided over the original <u>Dryer</u> case.  The two other opt-out cases were filed in the Western District of Pennsylvania and motions to transfer venue to the District of Minnesota were granted in both cases.  <u>See Tatum v. National Football League</u>, No. 2:13-cv-1814, 2014 WL 1652794, at *1 (W.D.Pa. Apr. 24, 2014); <u>Thompson v. National Football League</u>, No. 1:13-cv-367, 2014 WL 1646929, at *1 (W.D.Pa. Apr. 24, 2014).

Defendants now seek to transfer this case to Minnesota as well.

III. <u>**ANALYSIS**</u>

The statute governing transfers of venue, 28 U.S.C. § 1404(a), provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1391(b) provides guidelines as to when venue is proper, which is "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a

judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(a). If venue is appropriate, then the Court has discretion as to whether to transfer an action based on a balancing of certain private and public factors. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

The private factors are: "(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public factors are: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial

easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id., at 879-80 (citations omitted).

It is the movant's burden to show a need for transfer. Id.

**A. Venue**

The parties do not dispute that this case could have been brought in the District of Minnesota. There is no dispute that defendants regularly transact business in Minnesota, at least one named plaintiff resides in Minnesota, certain putative class action members likely reside or played in NFL games there, and at least a portion of the claims in this case arise from NFL footage shown or produced in Minnesota.

Therefore, it must be determined whether transfer would serve "the convenience of parties and witnesses" and "the interest of justice." See 28 U.S.C. 1404(a). To make this determination, the Court considers any related ongoing litigation as well as the Jumara private and public factors.

**B. Related Ongoing Litigation**

Defendants argue that the existence of similar litigation currently pending in the District of Minnesota automatically

7

warrants transfer of this case.  More specifically, defendants argue that the Dryer case filed in the District of Minnesota in 2009 raised the same claims as in this case – that the consent the retired NFL players "... gave in their contracts for the NFL to make telecasts and 'motion pictures' of the games in which they played expired with their retirement; that the continued use of footage of those games is not speech regarding a matter of public interest protected by the First Amendment; and that the use falsely communicates that the players endorse the NFL in violation of the federal Lanham Act, violates their state publicity rights, and unjustly enriches the NFL."  In Dryer, the parties engaged in extensive discovery, exchanged expert reports, and submitted summary judgment briefing on the issue of statute of limitations.  Summary judgment was granted as to claims that accrued more than six years before the case was filed, but further choice of law analysis was deemed required for the remaining claims.  The Dryer case settled in 2013.

Certain plaintiffs, however, opted out of the Dryer settlement.[5]  The Dryer opt-out case is pending in Minnesota.  Other opt-out plaintiffs filed separate court actions, two in Pennsylvania, and this case filed in New Jersey.  The Minnesota

---

[5] According to the settlement memorandum entered by the Court, over 2,000 plaintiffs in the Dryer action opted out of the settlement and were excluded from the settlement class.

case has advanced and has a pending trial date.  The two Pennsylvania cases were transferred to Minnesota in April 2014 (<u>Tatum</u> case, No. 0:14-cv-1265 (PAM-FLN) (D.Minn.) and <u>Thompson</u> case, No. 0:14-cv-1272 (PAM-FLN) (D. Minn.)).  As of August 2014, both <u>Tatum</u> and <u>Thompson</u> have not progressed beyond the initial pleading stage.  A pretrial conference was held on August 12, 2014.  Upon transfer to the District of Minnesota, the <u>Tatum</u> and <u>Thompson</u> cases were listed as "related" cases to <u>Dryer</u> action.

Although the original <u>Dryer</u> action settled, there are three opt-out cases pending before the District Court in Minnesota. This fact weighs heavily in favor of transferring this case. See <u>In re Amendt</u>, 169 F. App'x. 93, 96 (3d Cir. 2006) (declaring that "the most important factor is the avoidance of duplicative litigation: Adjudicating almost identical issues in separate fora would waste judicial resources.").  Generally, the rule followed is the "first-filed" rule which requires that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject matter must decide it."  <u>EEOC v. Univ. of Pennsylvania</u>, 850 F.2d 969, 971 (3d Cir. 1988).  "The applicability of the first-filed rile is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed cases

9

substantially overlaps with that of the earlier one." <u>Villari Brandes & Kline, P.C., v. Plainfield Specialty Holdings II, Inc.</u>, 2009 WL 1845236, at *6 (E.D.Pa. June 26, 2009); <u>see also Maximum Human Performance, Inc., v. Dymatize Enters., Inc.</u>, 2009 WL 2778104, at *3 (D.N.J. Aug.27, 2009) ("For the first-to-file rule to apply, there must be a substantial overlap between the two actions, but the issues and parties involved need not be identical.") (internal quotations omitted).

However, the authority to transfer "... is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." <u>Univ. of Penna.</u>, 850 F.2d at 972. "District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." <u>Id.</u> (citations omitted).

Since the <u>Dryer</u> opt-out litigation arose out of the initial <u>Dryer</u> action which was filed in 2009, it can be considered to be the "first filed."[6]  Here, plaintiffs' action also arises from

---

[6] Technically, the opt-out cases all arose and were filed around the same time period.  Therefore, it is not a straightforward application of the first-filed rule.  However, the existence of the original <u>Dryer</u> case, which lead to the first opt-out case, indicates that the first-filed rule should be considered.

the initial Dryer action, names the NFL as defendant[7] who asserts the same defenses, and asserts substantially similar claims of unfair competition, false endorsement, and publicity rights. There is no question that the subject matter overlaps.

In addition, the other two opt-out cases, Tatum and Thompson, have both been transferred to Minnesota, docketed as related to the Dryer action, and assigned to Judge Magnuson.

Therefore, the existence of the first opt-out Dryer case in Minnesota, and the recent transfer of the other two opt-out cases to Minnesota, is given substantial weight and weighs heavily in favor of transfer.  The other factors the Court must consider in determining whether transfer is appropriate are the Jumara public and private factors.

**C. Private Factors**

   **1. Plaintiffs' Forum Preference**

The general rule is that a plaintiff's choice of forum is given preference.  See Jumara, 55 F.3d at 870 ("in ruling on defendants' motion [to transfer] the plaintiff's choice of venue should not be lightly disturbed"); Wm. H. McGee & Co., Inc. v. United Arab Shipping Co., 6 F.Supp.2d 283, 290 (D.N.J. 1997) ("A

---

[7] This case also names NFL Films as a defendant.  This additional defendant, however, does not alter the claims or issues in this case from those raised in the Dryer case.

plaintiff's choice of forum is considered to be presumptively correct.").  However, a plaintiff's choice of forum will be afforded less weight when the plaintiff has chosen a foreign forum or where the choice of forum has little connection with the operative facts.  See McGee, 6 F. Supp. at 290.  In addition, in class action cases, a plaintiff's choice of forum is entitled to less deference.  Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 228 (D.N.J. 1996) ("the weight of authority holds that in class actions and derivative law suits the class representative's choice of forum is entitled to lessened deference.").

Here, one of the plaintiffs, Philip James Villapiano, is a resident of New Jersey.  The other nine named plaintiffs reside in other states across the country (i.e., Texas, Maryland, California, Minnesota, Nevada, North Carolina, and Florida). There is no allegation that the other similarly situated plaintiffs primarily reside in New Jersey.

Also, there is no allegation that the central facts of the case occurred in New Jersey.  Although plaintiffs allege facts that show that the production of NFL Films occurs primarily in New Jersey, their claim centers on the airing of their images which occurs nationally and even worldwide on the internet. Therefore, the central facts of this lawsuit do not occur

12

primarily within the forum state.

Accordingly, deference to plaintiff's choice of forum will not be applied.  However, the absence of deference does not mean that the factor cannot still weigh in favor of plaintiff. Although the Court will not defer to the plaintiffs' choice of forum, there is a least one named plaintiff who resides in this District and presumably some of the NFL footage at issue aired in New Jersey.  Therefore, this factor weighs in favor of plaintiffs, although it will not be considered a significant factor.

### 2. Defendants' Preference

"When analyzing a defendant's forum preference, the court examines whether the defendant can articulate rational, legitimate reasons to support that preference." Wireless Media Innovations, LLC v. LeapFrog Enterprises, Inc., No. 13-1545, 2014 WL 1203035, at *3 (D.Del. Mar. 20, 2014) (citing Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 201 (D.Del. 1998)).  Although NFL Films is located in New Jersey, defendants prefer to have the case transferred.  Defendants state that transfer will resolve this litigation promptly and efficiently in a single forum.

Currently, there are three opt-out cases pending in the District of Minnesota.  Having all four cases heard in a single

district is a rational, legitimate reason and this factor weighs in favor of transfer.

### 3. Whether Claim Arose Elsewhere

NFL films is located in New Jersey.  Plaintiffs have noted that in 2002, NFL Films opened a new 200,000 square foot, state-of-the-art film and television studio complex in Mt. Laurel, New Jersey.  They allege that the editing and production of the films is done in New Jersey.  However, plaintiffs' claims concern the airing of their images which is not limited to New Jersey.  Therefore, the Court finds that this factor neither weighs in favor of transfer or against it; it is neutral.

### 4. Convenience of the Parties

Only one named plaintiff is a New Jersey resident.  The other plaintiffs and putative class members live across the country.  NFL Films is located in New Jersey.  Given that the plaintiffs are all willing to have their claims heard in this district, and the locally situated defendant, NFL Films, wishes to have the case transferred, the Court considers this factor to be neutral.

### 5. Convenience of the Witnesses

This factor considers the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora.  Jumara, 55 F.3d at

879.  Defendants states that, to their knowledge, all witnesses will be available for trial either here or in Minnesota. Plaintiffs argue that due to recent changes to Fed. R. Civ. P. 45,[8] they do not have the ability to compel defendants, or any of their executives or other personnel, to testify at trial in Minnesota.  They also point out that third party witnesses from major media outlets in New York are within the subpoena power of this court and that they intend to make the NFL's launch of a new media platform called NFL Now, apparently based in New York, a major focus of discovery in this matter.

In reply, defendants state that the NFL agrees to make available in Minnesota the NFL and NFL Films employees that the trial court determines are reasonably necessary to plaintiffs' case and who would have fallen within the geographical limits of this Court's subpoena power.  They also argue that class actions rarely go to trial and that plaintiffs may utilize the common practice of videotaped depositions for third party witnesses who are outside the jurisdiction of this court.

---

[8] Rule 45 limits the power of a subpoena to command a person to attend trial, hearing or deposition to: "(A) within 100 miles of where the person resides, is employed, or regularly transactions business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."

Plaintiffs' arguments on this point have merit.  This Court has on many occasions noted that, in general, the Federal Rules of Civil Procedure and the Rules of Evidence favor live testimony and that video depositions may impede a jury's ability to make credibility determinations.  Moreover, third party discovery may be important here as it relates to both liability and damages.  Nonetheless, we find this factor to be neutral.  First, defendants are correct in pointing out that while they have the burden to justify transfer, plaintiffs have failed to adequately explain why New York-based media are likely to possess unique information relevant in this case not discoverable from defendants.  Nor is it clear, given the Plaintiffs' apparent focus on internet commerce, that if such relevant information does exist with third parties it is more likely to be found in New York than it would be in California, for example.  Nor is it argued here that the on-going litigation in Minnesota has been hindered or impaired by Rule 45 or any other rule or procedure.  In sum, Plaintiffs' concerns, while potentially meaningful, appear speculative at this point.

Moreover, what makes this factor ultimately a neutral one, with one caveat, is defendants' agreement to make their employees who would have fallen within this Court's subpoena power available in Minnesota for trial.  Our concern centers on the defendants' use of the phrase "employees that the <u>trial</u>

court determines are reasonably necessary to plaintiffs' case."
(emphasis added.)  First, this standard appears to shift to
plaintiffs the burden of justifying a trial subpoena rather than
exercising the broad subpoena power the rules envision.  This
would add an unnecessary hurdle for plaintiffs, one that they
would not encounter if the case were tried here.

More importantly, it is not the same condition imposed by
the courts relied upon by defendants to urge transfer in this
matter based on the moving party's pledge not to invoke Rule
45(c).  In both those cases, the trial court conditioned
transfer based on the defendant's pledge to make available all
those employees that the plaintiff reasonably believed were
necessary to prosecute their claims.  This is a much different
standard than the one defendants propose and it seems to this
Court the one necessary to overcome an out of state plaintiff's
otherwise reasonable and justifiable choice to litigate in the
defendant's home forum.  See In re Consol. Parlodel Litig., 22
F. Supp. 2d 320, 325 (D.N.J.)("Nevertheless, out of an abundance
of caution, I will condition my grant of [defendant's] motion on
[defendant] making available for such trials those of its
employees whom Plaintiffs reasonably believe are necessary to
prosecute their claims.")(citing A.P.T., Inc. v. Quad
Environmental Technologies Corp., Inc., 698 F. Supp. 718, 724
(N.D.Ill. 1988) (granting motion to transfer pursuant to

17

§ 1404(a) "on the requirement that [defendant] make available for trial in California those of its employees who [plaintiff] reasonably believes are necessary to prosecute its claims")).[9] An agreement consistent with this opinion will be entered into by stipulation and signed by the parties and the Court as a Court Order prior to transfer.

### 6. Location of Books and Records

In our electronic age, this factor seems to carry less consideration than in years past.  Books and records, for the most part, are already in electronic format or can be saved electronically, and easily transported.  Plaintiffs state that the location of NFL Films' "SABER" computer system is in New Jersey and that it will be central to the litigation. Plaintiffs do not, however, explain why its capabilities can only be understood in New Jersey.  There is no allegation that the "SABER" computer which allows "hyper-advanced identification" of the putative class members' images can only be shown in a New Jersey courtroom, but not a Minnesota one. The possibilities that this case advances to trial, and that the Court "potentially" finds it desirable for jurors to visit the NFL studio are too remote to warrant keeping the case in this

---

[9]  This would not foreclose any ability to file a motion to quash, which option defendants would be able to exercise if the case stayed in this district.

District.   Thus, this factor is neutral.

### D. Public Factors

#### 1. Enforceability of the Judgment

The parties agree that there is no difference between a judgment entered in Minnesota and one entered here.   Therefore, this factor is neutral.

#### 2. Practical Considerations

The single most overriding practical consideration is that there are three substantially similar cases pending in the District of Minnesota.   To the extent that having all four cases heard in one district would save time and expense of everyone involved, this factor weighs in favor of transfer.

#### 3. Administrative Difficulty

According to the statistics published by the U.S. Federal Judiciary as of March 31, 2013, Minnesota had over 4,000 civil cases pending, 7 active[10] District Court judges, and New Jersey had over 7,000 civil cases pending with 16 active District Court judges.[11]   Therefore, the caseload per judge is not significantly different, and this factor is neutral.

---

[10] Active Article III Judges, not on senior status.

[11] See
http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2013/tables/C00Mar13.pdf

4. **Local Interest in Deciding Local Controversies**

There is a local interest in deciding this controversy in New Jersey given the location of defendant NFL Films.  That interest, however, is not enough to weigh against transfer.  First, only one named plaintiff is a New Jersey resident.  Thus, New Jersey has little interest in the claims of the other named plaintiffs.  Second, the distribution of the films in which plaintiffs claim defendants use their images is national, and even international, in scope.  There is no distinct New Jersey controversy.

Plaintiffs argue that New Jersey jurors are the appropriate ones to hear this case because Minnesota jurors should not be burden with vindicating the publicity rights of non-residents, or plaintiffs who did not play for a Minnesota team.  This argument could, however, be made for New Jersey jurors as well.  New Jersey jurors would be burdened with vindicating the publicity rights of many plaintiffs who have no ties with New Jersey.

Weighing the location of NFL Films in this District which gives rise to some local concern over the outcome of this case against the national scope of the claims presented by plaintiffs, the Court finds them in equipoise and, therefore, this factor is neutral.

5. **Public Policies of the Fora**

The parties have not identified any public policy that would weigh in favor of or against transfer.  Therefore, this factor is neutral.

6. **Familiarity of the Trial Judge With the Applicable State Law**

As indicated by plaintiffs' claims in their complaint, many states' laws are potentially applicable to this litigation.  Any district court is capable of interpreting state law.  Therefore, the issue is whether the District Court in Minnesota is already familiar with application of the pertinent state laws in this case.  Defendants argue that Judge Magnuson in Minnesota has already familiarized himself with those laws in connection with the Dryer case.  Plaintiffs minimize the application of state law by stating that "Senior Judge Magnuson issued only two orders of substance prior to settlement, denying the NFL's early motion for judgment on the pleadings more than four years ago (in January 2010), and denying as 'premature' the NFL's early motion for partial summary judgment limited to choice-of-law and statute of limitations issues (in December 2012)."  It is not clear from either party whether Judge Magnuson actually applied state law.  Thus, both Courts are equally capable of applying and familiarizing themselves with the applicable state law.  Accordingly, this factor is neutral.

Weighing all the public and private factors, the Court finds that there are four factors that weigh in favor of transfer, one factor that weighs against it, and the remaining factors are neutral.  Adding the existence of a previously filed similar litigation, which carries significant weight, the balance clearly tips in favor of transferring this case to the District of Minnesota.

IV.   **CONCLUSION**

The defendants have met their burden in providing facts in support of transferring this matter to the District of Minnesota.  It is within the Court's discretion whether to transfer a case and, contingent upon the parties entering a joint stipulation regarding the availability of defendants' witnesses as outlined above, the Court will issue an Order transferring this matter to the District of Minnesota.


　　　　　　　　　　　　　　　s/Noel L. Hillman
　　　　　　　　　　　　　NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated:   September 29, 2014